2003-NMCA-043

64 P.3d 499

In the Matter of the Application of the Northeastern New Mexico Regional Landfill for a Modification for the Northeastern New Mexico Regional Landfill,

Sofia MARTINEZ, Felipe Garcia, and Betty Medina, Appellants,

v.

Peter MAGGIORE, Secretary of the New Mexico Environment Department, Appellee.

No. 21,067.

Court of Appeals of New Mexico.

Nov. 7, 2002.

Michael H. Feldewert, Robert J. Sutphin Jr., Holland & Hart, L.L.P and Campbell & Carr Santa Fe, NM, for Appellants.

Patricia A. Madrid, Attorney General, Clay Clarke, Special Assistant Attorney General, NM Environment Department, Santa Fe, NM, for Appellee.

*OPINION*

ALARID, Judge.

**INTRODUCTION**

{1} Appellants appeal from a Final Order of the Secretary of the New Mexico Environment Department granting the Northeastern New Mexico Regional Landfill's application for modifications to its solid waste facility permit. This appeal requires us to address the consequences of defects in public notice required by the Solid Waste Act. We hold that (1) the notice published by the applicant did not substantially comply with the requirements governing the manner of publication; (2) the defective notice invalidates the subsequent administrative proceedings; (3) Appellants have standing to object to deficiencies in the manner in which the notice of application for permit modification was published by the applicant; and (4) this case must be remanded to the Secretary for reconsideration of the application after publication of proper notice.

## BACKGROUND

{2} In March 1997, the Secretary of the New Mexico Environment Department (the Secretary) granted the Northeastern New Mexico Regional Landfill (Landfill) a permit to operate a solid waste facility to be located in Mora County, approximately 6½ miles north of the Village of Wagon Mound. In the spring of 1999, Landfill began the process of applying for modifications to its permit. One of the proposed modifications, which is the subject of this appeal, would allow Landfill to accept several types of "special wastes" at its solid waste facility. Special wastes is a regulatory term of art, defined at NMSA 1978, § 74–9–3(R) (1990) and 20 NMAC 9.1.I.105(BZ) (2002). Specifically, Landfill sought authority to accept the following types of special wastes: (1) treated formerly characteristic hazardous waste[1]; (2) packing house and killing plant offal; (3) waste water treatment plant, and other sludge; (4) industrial solid waste; (5) asbestos waste; (6) spill of a chemical substance or commercial product; (7) petroleum contaminated soil; and (8) ash.

{3} Landfill arranged for the following notice to be published in English and in Spanish in the legal advertisement section of two newspapers, the Raton Range and the Las Vegas Optic.

### PUBLIC NOTICE

The Northeastern New Mexico Regional Landfill herein is providing Public Notice of its intent to file, during the month of April 1999, an application for permit modification to the existing facility permit with the New Mexico Environment Department to accept special waste....

. . . .

DESCRIPTION: The facility is a municipal solid waste landfill located in the north half of Section 35 and the south half of Section 26, Township 22 North, Range 21 East, Mora County, New Mexico. The facility is 60 acres and handles 36,500 tons per year of municipal solid waste. Operation of the facility is in accordance with the original application for permit dated March 26, 1997, the requirements of the New Mexico Environment Department and the 1994 New Mexico Solid Waste Regulations. The proposed permit modification would allow the facility to accept limited special wastes.... [This] modification would be in compliance with the 20 NMAC 9.1 New Mexico Solid Waste Management Regulations.

ORIGIN OF WASTE: Waste will originate primarily from the counties of northeast New Mexico[;] however[,] it may also originate from areas outside this region if it is cost effective.

Any comments concerning these items should be directed to the Northeastern New Mexico Regional Landfill or to New Mexico Environment Department.

The notice was published in the Las Vegas Optic on April 26, 1999 and in the Raton Range on April 27, 1999.

{4} On August 2, 1999, the Secretary filed a Notice of Hearing in the administrative record. The Notice of Hearing provided the following information:

A public hearing on the above captioned matter will be held on Thursday, September 9, 1999 by the Environment Department of the State of New Mexico to consider an application submitted by the Northeastern New Mexico Regional Landfill (NENMRL) for a modification to the facility's solid waste facility permit. The facility is located approximately 6½ miles north of the Village of Wagon Mound, New Mexico, in Sections 26 and 35, Township 22 North, Range 21 East, Mora County, New Mexico. The hearing will begin at 3:00 P.M., September 9, 1999, in the Council Room of the Wagon Mound Village Hall,

---

1. Generally speaking, a substance is hazardous if it is a "listed" hazardous waste, or, if unlisted, it has certain characteristics of hazardous waste: (1) ignitability, corrosivity, reactivity and EP toxicity. William H. Rodgers, Jr., *Environmental Law* 590–94 (2d ed.1994). According to the testimony of Landfill's expert, treated formerly characteristic hazardous waste consists of characteristic hazardous waste that has been treated so as to neutralize the characteristics that formerly rendered it hazardous.

600 Catron Ave, Wagon Mound, New Mexico.

The applicant has requested two modifications to a 10 year solid waste facility permit for a 60 acre disposal area being developed within a 357 acre site as follows:

Permit Modification Request (1): In addition to municipal and construction and demolition waste which the landfill is currently permitted to accept, the applicant requests to be permitted to accept the following (non-hazardous) special wastes: treated formerly characteristic hazardous waste; packing house and killing plant offal; waste water treatment plant sludge; industrial solid waste; spill of a chemical substance or commercial product; and petroleum contaminated soils.

. . . .

The application for the permit modification has been reviewed for compliance with the New Mexico Solid Waste Act ("Act") and Solid Waste Management Regulations (20 NMAC 9.1). The Act authorizes the Secretary of Environment ("Secretary") to approve modifications to existing solid waste facility permits. Public comment received during the public hearing will be considered by the Secretary in making a final decision on the permit modification application.

The application may be reviewed between the hours of 9:00 A.M. and 5:00 P.M., Monday through Friday at the following locations:

Village Clerk's Office, Wagon Mound Village Hall . . . and the New Mexico Solid Waste Bureau . . . Santa Fe. . . .

. . . .

Any person wishing to be a party or present technical evidence at the hearing shall file an Entry of Appearance or Statement of Intent to Present Technical Testimony, in accordance with Sections 301 and 302 of 20 NMAC 1.4, no later than 5:00 P.M. August 25, 1999. However, statements of a non-technical nature from individuals not wishing to be parties will be allowed without prior notice.

On August 6, the Secretary's Notice of Hearing was published as both a legal advertisement and a display advertisement in the Las Vegas Optic.

{5} The Secretary conducted a public hearing on Landfill's application on September 9, 1999. On January 6, 2000, the Secretary entered a final order granting Landfill's application for modifications to its permit. Appellants, each of whom is a resident of Wagon Mound, New Mexico and each of whom objects to the modification allowing Landfill to accept special wastes at its solid waste facility, have brought a timely appeal pursuant to NMSA 1978, § 74–9–30 (1990).

## DISCUSSION

### 1. Jurisdiction and Standard of Review

{6} Our jurisdiction over this appeal is provided by Section 74–9–30 of the Solid Waste Act, NMSA 1978, §§ 74–9–1 through –43 (1990, as amended through 2001). We may set aside the Secretary's action only it if is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Subsection 74–9–30(B).

### 2. Statutory Notice Requirements

{7} Section 74–9–22 governs the notice that the applicant for a solid waste permit must give to the public and to affected individuals and entities. In addition to requiring notice by posting, and by certified mail to various individuals and governmental entities, Section 74–9–22 directs that the notice of application be:

> published once in a newspaper of general circulation in each county in which the property on which the facility is proposed to be constructed, operated or closed is located. This notice shall appear in either the classified or legal advertisements section of the newspaper *and at one other place in the newspaper calculated to give the general public the most effective notice* and, when appropriate, shall be printed in both English and Spanish[.]

Subsection 74–9–22(C) (emphasis added). The notice published by the applicant pursuant to Subsection 74–9–22(C) is separate from the notice of hearing published later in the proceeding by the Secretary. *Cf.* Subsec-

tion 74–9–23(B) (requiring Secretary to give notice of hearing on completed application "in the same manner as required in [Section 74–9–22]").

{8} We think that the Legislature, in enacting Subsection 74–9–22(C), recognized that most members of the general public do not routinely read the legal or classified advertisement sections of the newspaper, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (noting that "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper"), and that publication of a notice of application for a landfill permit would reach more members of the general public, if, in addition to publication in the legal or classifieds advertisements, the notice were to be published "at one other place in the newspaper calculated to give the general public the most effective notice." Subsection 74–9–22(C) is one of only two statutes, the other being another environmental statute, NMSA 1978, § 69–36–7(K)(3) (1993), that mandate publication of public notice in both the legal/classified section and "one other place ... calculated to give the general public the most effective notice." While not going so far as to mandate personal notice to every potentially interested person, Subsection 74–9–22(C) clearly contemplates more than the purely constructive form of notice provided by publication in "small type in the back pages of a newspaper."

{9} Our review of the record, which includes photocopies of the notices actually published in legal advertisement sections of the Raton Range and the Las Vegas Optic, indicates that publication "in small type in the back pages of a newspaper" is precisely what occurred in the present case. Landfill caused its notice to be published in small print in the legal advertisements section of two different newspapers. However, in neither instance was the notice published in a second place "calculated to give the general public the most effective notice" as required by Subsection 74–9–22(C). The form of publication employed by Landfill did not substantially fulfill the statutory requirement of a single publication in which the notice appears in *both* the legal/classified section and "one other place calculated to give the general public the most effective notice."

### 3. Consequence of Failure to Substantially Comply with Statutory Notice Requirements

{10} At the time Subsection 74–9–22(C) was enacted, the leading case on the consequences of failure to publish notice in substantial compliance with statutory requirements was *Nesbit v. City of Albuquerque*, 91 N.M. 455, 575 P.2d 1340 (1977). In *Nesbit*, several neighbors opposed a requested change in a development plan that would have changed the type and density of use from 83 condominiums to 287 efficiencies and apartments. Prior to an October 2, 1972 hearing before the City Commission on the developer's request, the developer caused a notice of the hearing to be published. However, the notice did not describe the subject property with the specificity required by the applicable statute. The neighbors learned of the hearing by other means and were represented at the hearing. The City Commission denied the requested change in the development plan. Without giving notice to the neighbors, the developer appealed to the district court.

{11} The district court reversed the decision of the City Commission in a March 21, 1973 judgment that ordered the City Commission to approve the changed plan. The neighbors lacked actual notice of the district court proceedings and were unaware that the district court had reversed the City Commission's ruling and ordered the approval of the plan, until 1976, when the developer began construction of the development. Upon learning of the 1973 judgment, the neighbors successfully moved to intervene in the district court proceeding for the purpose of filing a motion to set aside the 1973 judgment. The 1976 district court found that the published notice of the October 2, 1972 hearing had not adequately described the property on which the development was to be located and was inadequate to put a reasonable person on notice of how the proposed change would fundamentally alter the use of the property. The 1976 district court ruled that

the failure to give notice prior to the October 2, 1972 hearing as required by the applicable statute rendered "all subsequent acts void." *Id.* at 459, 575 P.2d at 1344. The 1976 district court vacated the 1973 judgment.

{12} Upon appeal by the developer, the Supreme Court affirmed. The Supreme Court held that the published notice of the October 2, 1972 hearing was "clearly inadequate" and that the actual notice to the neighbors was a legally insufficient substitute. The Supreme Court held that, in view of the inadequate notice to the public, the City Commission's decision of October 2,1972 was "void." *Id.* at 459, 575 P.2d at 1344.

{13} We recognize that *Nesbit* was a zoning case, while the present case is a permitting proceeding pursuant to the Solid Waste Act. We see close parallels between the two types of proceedings: both involve changes in the use of land which potentially can affect the general public as well as the individual interests of landowners whose properties are located near the subject property. The Legislature may be presumed to have been aware of *Nesbit* when it enacted Subsection 74–9–22(C). *See V.P. Clarence Co. v. Colgate*, 115 N.M. 471, 474, 853 P.2d 722, 725 (1993). As with the notice statute at issue in *Nesbit*, NMSA 1953, § 14–20–4(B) (1965), the Legislature, in enacting Subsection 74–9–22(C), did not specify what consequence should flow from a failure to substantially comply with statutory notice requirements. We think it unlikely that the Legislature intended that there would be no consequence attendant to a failure to comply with the most-effective-notice requirement of Subsection 74–9–22(C), and we do not perceive a reason why the Legislature would have intended that a violation of the most-effective-notice provision of the Solid Waste Act should be treated more lightly than a violation of the notice provisions applicable to zoning. Previously, in *Eldorado at Santa Fe, Inc. v. Cook*, 113 N.M. 33, 37, 822 P.2d 672, 676 (Ct.App.1991), we relied on *Nesbit* in holding that the failure to comply with statutory notice requirements in a water well permitting proceeding deprived the State Engineer of the authority to act on an application for a change in the location of a water

well. We once again follow *Nesbit* and hold that the administrative proceedings conducted subsequent to Landfill's defective notice are invalid. We vacate the order granting Landfill's application and remand to the Secretary for de novo review of Landfill's application after publication of notice substantially complying with Subsection 74–9–22(C).

### 4. Standing

■ {14} NMED argues that Appellants lack standing under Subsection 74–9–30(A) because they have not shown that they themselves were "adversely affected" by Landfill's failure to publish notice in the manner required by Subsection 74–9–22(C). NMED points out that two of the three Appellants attended the hearing and that the remaining Appellant has not alleged that she lacked actual notice of the application or the hearing.

{15} NMED's argument confuses Appellants' due process right to individual notice with Subsection 74–9–22(C)'s statutory requirement of notice to the general public. Although Subsection 74–9–22(C) may incidentally protect the due process rights of individual property owners whose use and enjoyment of their properties may be affected by the grant or denial of an application, we do not understand notice to particular individuals to be the primary function of the most-effective-notice requirement of Subsection 74–9–22(C). Subsection 74–9–22(C) reflects a Legislative policy favoring involvement of the general public in the permitting process. As we explain below, this policy was frustrated by Landfill's failure to publish notice in the manner required by Subsection 74–9–22(C).

{16} Landfill's notice of application was published in small print in the legal section of the Las Vegas Optic and the Raton Range on April 26–27, 1999. It was not until August 6, 1999—over three months later—when the Secretary published his notice of hearing in both the legal advertisements section and in the main body of the Las Vegas Optic, that a public notice was published other than in small print in the back pages of a newspaper.

{17} The loss of these three months may well have been fatal to Appellants' and the

public's ability to meaningfully participate in the permitting process. The notice of hearing published by the Secretary on August 6, 1999 established a cut off date of August 25, 1999 for entering an appearance or filing a statement of intent to present technical testimony. By regulation, a statement of intent to present technical testimony must identify the witness and summarize the witness's testimony. 20 NMAC 1.4.III.302.A (2002). Failure to timely file a statement of intent to present precludes a person from presenting technical testimony. 20 NMAC 1.4.III.302.-A.2. The opponents of Landfill's application would have had less than three weeks from the Secretary's notice to organize, locate counsel and expert witnesses, and prepare a notice of intent to present technical testimony. We note that Landfill did not face such problems because it had prepared detailed studies of the environmental impact of its requested permit modification prior to filing its application in July 1999. Landfill and NMED were the only participants who filed notices of intent to present technical testimony. At the September 9, 1999 hearing, Landfill and NMED presented expert testimony, while the opponents of the application were limited to offering non-technical comments and questioning Landfill and NMED's experts. Under the circumstances, we cannot say that Landfill's failure to publish notice substantially complying with Subsection 74–9–22(C) was rendered harmless as a matter of law by the fact that Appellants and a number of other residents of the area attended the hearing and expressed their lay concerns.

{18} Because Appellants are vindicating the general public's right to participate in the permitting process in addition to their own right to proper statutory notice, we think it appropriate to consider whether Appellants satisfy the requirements for third-party standing set out in *New Mexico Right to Choose/NARAL v. Johnson,* 1999–NMSC–005, ¶ 13, 126 N.M. 788, 975 P.2d 841. *Johnson* directs us to consider the following three criteria in determining whether Appellants should be granted standing to assert the rights of absent opponents of Landfill's application:

■ The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; [2] the litigant must have a close relation to the third party; and [3] there must be some hindrance to the third party's ability to protect his or her own interests.

*Id.* (quoting *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).

{19} We hold that Appellants are proper persons to raise Landfill's failure to publish notice as required by Subsection 74–9–22(C). First, Appellants themselves claim an injury in fact from the Secretary's decision granting Landfill's application. Each of the Appellants has submitted an affidavit explaining how the quality of his or her life as a resident of Wagon Mound would be adversely affected if the Landfill were allowed to accept special wastes. Second, Appellants and absent opponents of the Landfill share an important interest in insuring that modifications to Landfill's permit do not adversely affect the quality of life in Wagon Mound. Third, absent opponents of Landfill's application have been hindered in participating in the permitting process by Landfill's failure to publish notice as required by Subsection 74–9–22(C).

{20} For the above reasons, we hold that Appellants have standing to assert Landfill's failure to publish its notice of application in a manner substantially complying with Subsection 74–9–22(C).

### 5. Additional Defects in Notice

{21} Because we are remanding this case to the Secretary for de novo review of Landfill's application after publication of proper notice, we take this opportunity to express our concerns with a number of additional procedural defects asserted by Appellants.

{22} First, we are concerned with the omission of any reference to asbestos in the notice of hearing published by the Secretary. We think that it may have been particularly misleading to the public to omit any reference to asbestos waste in the notice, when other categories of special wastes were specifically listed.

{23} Second, we are concerned that the Secretary's decision to schedule the hearing on the application at 3:00 p.m. on a weekday may have unnecessarily and unreasonably disadvantaged members of the public who were unable to take time away from work to attend an afternoon hearing. The Secretary's stated rationale that most residents of the area are ranchers who do not keep regular business hours is not supported by any evidence of record. We encourage the Secretary to develop an adequate record on this point on remand.

{24} Third, we are concerned with whether the ethnic makeup of the region surrounding the solid waste facility makes this an appropriate case for publishing the notice of hearing in both English and Spanish. We note that Landfill considered it appropriate to publish its notice of application in both English and Spanish. We encourage the Secretary on remand to develop a record on the appropriateness of publication in both languages. Of course, the Secretary may obviate this concern entirely simply by publishing the notice of hearing in both English and Spanish.

## CONCLUSION

{25} The Secretary's final order is vacated and this matter is remanded for further proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

I CONCUR: RICHARD C. BOSSON, Chief Judge.

LYNN PICKARD, Judge (specially concurring).

PICKARD, Judge (specially concurring).

{27} I concur in the result of the majority opinion. I write separately to clarify that, in my view, reversal is mandated in this case not because of some technical defect in the notice, but because the defects in notice, when fully explained and when taken together with the other procedural defects identified in the opinion, indicate that the purposes of the Solid Waste Act's hearing requirements were not met. I also believe that it is this violation of the special purposes of the hearing requirement that contributes to give Appellants standing.

{28} It should be highlighted that, in this case, not only was Landfill's notice not appropriately published in two places, but it never defined or listed what the "special waste" was. Once the Secretary published his notice, which was a large display ad, he listed some of the types of wastes listed in the application, but omitted reference to asbestos, a type of special waste that could cause particular concern among members of the general public. In my view, it is the constellation of defects in the notice procedure that rendered the hearing ineffectual as the meaningful public hearing contemplated by the Legislature as such an important part of the Solid Waste Act. *See Southwest Research & Info. Ctr. v. State*, 2003–NMCA–012, ¶ 37, 133 N.M. 179, 62 P.3d 270 (recognizing that the hearing requirement and public input obtained during the hearing is central to the Solid Waste Act), *cert. granted*, 132 N.M. 551, 52 P.3d 411 (2002); 20 NMAC 1.4.1.109 (2002) ("This part 4 governing Permit Procedure for the Environment Department] shall also be liberally construed to facilitate participation by members of the public[.]").

{29} In opposition to the main issue on which the majority opinion reverses, the Secretary argued that Landfill was attempting to publish notice "calculated to give the general public the most effective notice" because "both the Optic and the Range are very small newspapers and the public notice of the proposed permit modification is lengthy[; therefore], to publish twice in one paper would have resulted most likely in the notice appearing twice on the same page." There is nothing in the record to support this assertion, and in fact the notice of hearing published by the Secretary himself was published twice in the same newspaper, once in the small print legal section and the other time as a large display ad. Therefore, it was certainly possible for Landfill to comply with the statutory directive, as the Secretary's placement of his notice did.

{30} When all of the procedural defects are added together in this case, it is clear to me that there was compliance with neither

the intent nor the letter of the Solid Waste Act. Therefore, I agree that it is necessary to remand the Secretary's decision for further proceedings in compliance with the statute.