This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NORTHEASTERN NEW MEXICO REGIONAL LANDFILL, L.L.C.,**

Plaintiff-Appellant/Cross-Appellee,

v.                                                      **NO. 28,236 consolidated with 28,229**

**THE NEW MEXICO ENVIRONMENT DEPARTMENT,**

Defendant-Appellee/Cross-Appellee

and

**SOPHIA MARTINEZ, FELIPE GARCIA, BETTY MEDINA, AND THE CONCERNED CITIZENS OF WAGON MOUND AND MORA COUNTY,**

Defendants-Appellees/Cross-Appellants

**APPEAL FROM THE SECRETARY OF THE NEW MEXICO ENVIRONMENT DEPARTMENT**
**Ron Curry, Secretary of the New Mexico Environment**

Hinkle, Hensley, Shanor & Martin, LLP
Thomas M. Hnasko
Gary W. Larson
Dulcinea Z. Hanuschak
Santa Fe, NM

for Appellant/Cross-Appellee
Northeastern New Mexico Regional

Landfill, L.L.C.

New Mexico Environment Department
Charles F. Noble
Santa Fe, NM

for Appellee/Cross-Appellee
New Mexico Environment Department

Holland & Hart, LLP
Robert J. Sutphin, Jr.
Larry J. Montaño
Kristina Martinez
Santa Fe, NM

for Appellees/Cross-Appellants
Sophia Martinez, Felipe Garcia,
Betty Medina and the Concerned Citizens
of Wagon Mound and Mora County

## MEMORANDUM OPINION

**FRY, Judge.**

Appellant Northeastern New Mexico Regional Landfill, L.L.C. (NENMRL) and Cross-Appellant Concerned Citizens of Wagon Mound and Mora County (Concerned Citizens) appeal from an administrative order of the Secretary of the New Mexico Environment Department (NMED) renewing NENMRL's existing municipal solid waste permit for an additional ten-year period and also granting in part certain permit modifications requested by NENMRL. This consolidated case requires us to specifically address the Secretary's decision with respect to two of NENMRL's requested permit modifications. In the main appeal, NENMRL challenges the

3

Secretary's denial of a requested permit modification to handle and dispose of certain nonhazardous special wastes at the landfill. In the cross-appeal, Concerned Citizens contests the Secretary's decision to grant a permit modification to NENMRL for the acceptance of municipal solid waste via railroad transport. We affirm.

**BACKGROUND**

These consolidated appeals concern an existing solid waste facility that is privately owned by NENMRL and located in Mora County, approximately six miles north of Wagon Mound, New Mexico. NMED first issued a permit to NENMRL for the acceptance of municipal solid waste at the facility in 1997. Since operations began, the facility has been operated by Herzog Environmental, Inc. (Herzog), a third party not directly involved in this case.

At issue in this case is NENMRL's application for permit renewal and modification that was submitted on October 15, 2005, to the Solid Waste Bureau of NMED pursuant to the Solid Waste Act (the Act), NMSA 1978, §§ 74-9-1 to -43 (1990, as amended through 2001), and its implementing regulations, 20.9.1 NMAC (recompiled 11/27/01). In the application, NENMRL requested that its existing permit for the acceptance and disposal of municipal solid waste be renewed for an additional ten-year period. NENMRL also sought several permit modifications in its application, as follows: (1) authorization to handle and dispose of certain nonhazardous special

wastes at its facility, (2) authorization to accept deliveries of waste via rail transport, (3) expansion of the boundary of the landfill for purposes of developing a rail transfer area, (4) modification of the slope of the final cover of waste disposal areas, and (5) authorization to accept hand loads of solid waste from the public. Significantly, this was NENMRL's third application for a permit modification to accept nonhazardous special wastes at its facility. The previous two applications had been denied and were the subject of previous appeals to this Court.

The 2005 application was deemed administratively and technically complete by the Solid Waste Bureau (hereinafter "Solid Waste Bureau" or "Bureau") on May 11, 2007. Subsequently, at the direction of the Secretary of NMED, a five-day public hearing was conducted before a hearing officer on August 20-24, 2007, in Wagon Mound, New Mexico. At the hearing, the hearing officer heard testimony from representatives of NENMRL, the Solid Waste Bureau, Concerned Citizens, and members of the public. Concerned Citizens, an organization composed largely of community residents, was an intervening party that opposed the granting of NENMRL's permit application.

At the conclusion of the hearing, the hearing officer allowed all parties to submit written closing arguments as well as proposed findings of fact and conclusions of law. Subsequently, on the basis of the hearing and the parties' written arguments,

5

the hearing officer submitted a report to the Secretary for his consideration, in which she summarized the evidence and testimony elicited at the hearing and offered proposed findings of fact and conclusions of law regarding NENMRL's permit application. The hearing officer recommended that NENMRL's existing municipal solid waste permit be renewed for an additional ten-year period. With regard to NENMRL's proposed permit modifications, the hearing officer recommended that the Secretary grant all requested permit modifications, with the exception of the modification for the acceptance of nonhazardous special wastes. The hearing officer also recommended a number of permit conditions, including several that were directed to the modification that authorized the acceptance of waste via rail transport.

On December 17, 2007, the Secretary issued a final order, in which he adopted the hearing officer's report in its entirety. In accordance with the hearing officer's report, the Secretary renewed NENMRL's existing permit for an additional ten-year period and granted all of its requested permit modifications, with the sole exception of the modification for the handling and disposal of nonhazardous special wastes. Additionally, the Secretary adopted all permit conditions recommended by the hearing officer. These appeals followed.

In the main appeal, NENMRL challenges the Secretary's denial of the special waste permit modification, with NMED and Concerned Citizens arguing in response

that the Secretary did not err in denying this particular modification.  In the cross-appeal, Concerned Citizens challenges the Secretary's decision to grant the permit modification allowing NENMRL to accept wastes via rail transport, with NENMRL and NMED arguing in response that the Secretary did not err in granting this modification.  The appeals were consolidated for our review and we address each appeal in turn below.

**DISCUSSION**

**A.    STANDARD OF REVIEW**

Before we address the merits of the parties' arguments, we provide the standard of review and address the applicable regulatory framework for our review.  This Court has jurisdiction over the appeal of an administrative action taken pursuant to the Act under Section 74-9-30(A).  We may set aside the Secretary's final order regarding permit issuance only if the decision is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 74-9-30(B).  In reviewing an administrative decision for arbitrary and capricious conduct, "we review the whole record to ascertain whether there has been unreasoned action without proper consideration or disregard of the facts and circumstances." *Paule v. Santa Fe Cnty Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 30, 138 N.M. 82, 117 P.3d 240 (internal quotation marks and citation omitted);

7

*see Colonias Dev. Council v. Rhino Envtl. Servs. Inc.*, 2005-NMSC-024, ¶ 13, 138 N.M. 133, 117 P.3d 939 (stating that an administrative decision is arbitrary and capricious if it is "unreasonable or without a rational basis"). In addition, when we review an administrative decision for substantial evidence, we "apply whole record review, meaning that we examine all of the evidence in the record, not just the evidence that supports the decision." *Pickett Ranch, LLC v. Curry*, 2006-NMCA-082, ¶ 5, 140 N.M. 49, 139 P.3d 209 (internal quotation marks omitted). "The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Snyder Ranches, Inc. v. Oil Conservation Comm'n*, 110 N.M. 637, 639, 798 P.2d 587, 589 (1990) (internal quotation marks and citation omitted). To the extent that the parties raise questions of statutory interpretation, we apply de novo review. *Pickett Ranch*, 2006-NMCA-082, ¶ 5. However, we will give deference to an agency's interpretation of its own ambiguous regulations. *Id.*

As for the regulatory framework, the parties have stipulated that the applicable regulations are those found in the 2001 version of the Solid Waste Management Regulations, which were provided to this Court by the parties. 20.9.1 NMAC. The parties have also stipulated that the 2001 version is a recompilation of the 1995 version of the Solid Waste Management Regulations. 20.9.1 NMAC (10/27/95)

8

Although the parties agree that the 2001 version of the regulations was applicable at the time of the administrative proceedings below, we note that the administrative record in this case contains citations to both the 1995 and 2001 regulations. However, we clarify that our analysis is based on the 2001 version, and we have considered the parties' arguments in the context of this version only. Our analysis also includes references to the 2001 version of NMED's Permitting Procedures. *See* 20.1.4 NMAC (recompiled 11/27/01), *available* at the New Mexico Administrative Code, http://www.nmcpr.state.nm.us/nmac/parts/title20/20.001.0004.htm.

**B.    MAIN APPEAL**

In the main appeal, we address the Secretary's decision to deny NENMRL a permit modification to handle and dispose of nonhazardous special wastes at its facility. NENMRL challenges a number of the Secretary's findings and conclusions concerning the denial of this particular permit modification, asserting that the Secretary either abused his discretion, acted arbitrarily and capriciously, or made findings that were not supported by substantial evidence. We address each of the six contested findings and/or conclusions in turn below.

9

**1.    The Secretary's Conclusion That NENMRL Failed to Provide Specific Estimates of the Anticipated Amount and Frequency of Disposal of Special Wastes**

NENMRL argues that the Secretary erroneously concluded that its permit application "failed to provide [required] specific estimates of the anticipated amount and frequency of disposal" for the special wastes that it proposed to accept at its facility through the requested special waste permit modification.  The Secretary specifically determined that this was a violation of 20.9.1.200(F)(2) NMAC (recompiled 11/27/01), which requires applicants seeking to accept special wastes at a landfill facility to include information in their applications regarding "the anticipated amount and frequency of disposal of the wastes."

In making this determination, the Secretary relied in part on findings he had made in support of the 2004 denial of NENMRL's second application for a special waste permit.  In that previous denial, the Secretary specifically found that NENMRL had failed to give any estimates despite the fact that it had historical data upon which to base such estimates.  Historical data was available because NENMRL had been authorized to and actually accepted special wastes at its facility from August 2000, when the Secretary approved its first application for a special waste permit, until November 2002, when this Court overturned the granting of that permit in *Martinez v. Maggiore*, 2003-NMCA-043, 133 N.M. 472, 64 P.3d 499.  Essentially, the

10

Secretary's 2004 order determined that NENMRL's failure to give special waste estimates based on actual figures from the above time period indicated a failure to comply with the regulatory requirements of 20.9.1.200(F)(2) NMAC. Turning to the October 12, 2005, permit application at issue in this case, the Secretary entered a finding that NENMRL had again failed to correct the application deficiency noted in his 2004 final order. In other words, the Secretary found that NENMRL had once again failed to provide estimates of the anticipated amounts and frequency of disposal of nonhazardous special wastes.

On appeal, NENMRL challenges the Secretary's finding and argues that its application actually provided "detailed special waste estimates and delivery frequencies, based on data from the [time] period when it operated with a special waste permit." NENMRL contends that it used the historical data as a baseline to quantify the "anticipated amounts of the special wastes it reasonably expected to receive over the ten-year life of a new modified permit." NENMRL further points out that representatives from the Solid Waste Bureau of NMED agreed with its approach. Accordingly, NENMRL argues that the Secretary's disregard for the "unrebutted evidence" it submitted regarding special waste estimates was arbitrary, capricious, and an abuse of discretion.

In determining whether the Secretary abused his discretion or acted arbitrarily and capriciously in concluding that the special waste estimates provided by NENMRL failed to comply with the requirements of 20.9.1.200(F)(2) NMAC, we "review the record to determine whether there has been unreasoned action without proper consideration in disregard for the facts and circumstances." *Perkins v. Dep't of Human Servs.*, 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct. App. 1987). "[A]n agency's action is arbitrary and capricious if it provides no rational connection between the facts found and the choices made, or entirely omits consideration of relevant factors or important aspects of the problem at hand." *Atlixco Coalition v. Maggiore*, 1998-NMCA-134, ¶ 24, 125 N.M. 786, 965 P.2d 370. Likewise, "[w]here there is room for two opinions, the [agency's] action is not arbitrary or capricious if exercised honestly and upon due consideration, even though another conclusion might have been reached." *Perkins*, 106 N.M. at 655, 748 P.2d at 28. Finally, an agency abuses its discretion if it fails to proceed in the manner required by law, or if the agency's final order is not supported by the findings, or if the findings were not supported by the evidence put forth before the agency. *See id.*

We begin our analysis by summarizing the data submitted by NENMRL regarding the anticipated amounts and frequency of special waste that it proposed to accept at its facility, as provided in its application or elicited through testimony from

NENMRL representatives at the public hearing. The primary source for NENMRL's estimates was a data table that NENMRL included in its application and subsequently presented as an exhibit during the public hearing. The data table essentially provided an estimate in tons per year for six different types of special wastes for which NENMRL was requesting a special waste permit modification: petroleum contaminated waste, WWTP sludge, asbestos waste, industrial waste, nonhazardous chemical/commercial product, and killing plant offal. As a baseline for initial tons per year for each of the six special wastes, NENMRL used historical figures from the time period between 2000-2002 in which it had actually accepted special wastes. From there, NENMRL calculated and applied a fifteen percent annual incremental increase for each type of special waste listed in the table. The table projected anticipated volumes through 2017, which corresponded to the ten-year permit renewal time period that NENMRL had requested in its application. In addition to the six types of special wastes included in the data table, NENMRL provided an anticipated volume for ash-contaminated wastes. The anticipated volume for ash was calculated by taking the maximum capacity for the ash pit at the facility and dividing that number by the ten-year permit renewal term.

With regard to anticipated frequencies, NENMRL stated in its application that it "has the capacity to handle up to approximately 5,000 tons per day (tpd) of both

municipal solid waste and special wastes for a short duration" and that "the average daily tonnage over a 365 day period is not anticipated to exceed 1,000 tpd of municipal solid waste and special waste." In addition, at the public hearing, NENMRL's general manager explained that "a fair assessment" of anticipated frequencies "would be to take the actual tonnage [listed in the table] divided by 52 [weeks], and then that would give . . . a weekly average of the frequency of . . . the volume coming in."

NENMRL contends that the above estimates for anticipated volumes and frequency were "based on actual experience and projections within the solid waste industry" and that the fifteen percent per year incremental increase was a "commercially reasonable increment[]" to apply. Testimony from NENMRL representatives at the public hearing used similar language to describe the estimates. Specifically, NENMRL's general manager testified that the data table represented an accurate and reasonable estimate, but that the receipt of special wastes could vary because it is primarily an event-driven circumstance (e.g., fires); likewise, another NENMRL technical witness testified that the fifteen percent increase was reasonable based on his past experience.

The Solid Waste Bureau's position at the hearing did not differ significantly from NENMRL's position. The Bureau took the position that NENMRL's special

waste estimates "were adequate to meet the regulatory requirements" of 20.9.1.200(F)(2) NMAC and were "reasonable and represent[ed] the best efforts of [NENMRL] to foresee future receipt of special wastes." However, the Bureau's representative testified that its recommendations were subject to review by the Secretary and that the Secretary would make the final decision regarding the requested permit and any modifications based on the application and information presented at the hearing.

In contrast, Concerned Citizens argued below that NENMRL's estimates were not in compliance with regulatory requirements. One of Concerned Citizens' technical witnesses, Paul Robinson, testified that NENMRL had given no basis for the anticipated volumes aside from a "straight arithmetic projection" of fifteen percent, which was not based on "any special waste generation or handling need or market of any kind." He opined that NENMRL had failed to submit evidence that the fifteen percent figure reflected a "likely rate of growth" or that it reflected any actual knowledge regarding waste streams and the solid waste market in New Mexico. He further testified that NENMRL's calculations had not taken into account actual inquiries from potential customers as a means of more specifically calculating volumes based on actual market need. Robinson also expressed concerns with the anticipated frequency numbers provided by NENMRL, testifying that these numbers

were not realistic in light of NENMRL's historical frequency of 130 to 150 tons per day and the presence of other landfills in Northern New Mexico. Robinson concluded that the application deficiency noted by the Secretary in his 2004 final order regarding special waste estimates had not been rectified in NENMRL's current application.

Thus, the Secretary was presented at the hearing with two distinct opinions—from NENMRL and Concerned Citizens—regarding the adequacy of the anticipated volumes and frequency of disposal of special wastes provided by NENMRL in its application. Accordingly, whether the amounts provided by NENMRL complied with 20.9.1.200(F)(2) NMAC was ultimately a question of fact for the Secretary, one that we think necessarily required agency expertise to resolve. On issues such as this "where specialized technical or scientific knowledge is involved, we will give great deference to an agency's factual findings." *Pickett Ranch*, 2006-NMCA-082, ¶ 49; *see Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 17, 125 N.M. 401, 962 P.2d 1236 (stating that "[i]f the court is addressing a question of fact, the court will accord greater deference to the agency's determination, especially if the factual issues concern matters in which the agency has specialized expertise" (internal quotation marks and citation omitted)).

We conclude that the Secretary did not act arbitrarily or capriciously in determining that the special waste estimates provided by NENMRL failed to comply

with regulatory requirements. In his final order, the Secretary concluded that NENMRL's "estimates are vague and appear to be based on a straight-line projection of special waste amounts with no description of frequency of special waste disposal." In light of the evidence before the Secretary, this finding was supported by substantial evidence based on the arguments submitted by Concerned Citizens to the hearing officer. Robinson's testimony alone provided substantial evidence on which the hearing officer and the Secretary could have permissibly concluded that the estimates provided by NENMRL were not specific enough to meet the regulatory requirements. *See Albuquerque Bernalillo Cnty. Water Util. Auth. v. NMPRC*, 2010-NMSC-013, ¶ 18, 148 N.M. 21, 229 P.3d 494 (stating that "[s]ubstantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, and [courts] neither reweigh the evidence nor replace the fact finder's conclusions with [the court's] own" (internal quotation marks and citation omitted)). Given the Secretary's expertise in this area and the substantial evidence present in the record, we defer to the Secretary's factual findings on this issue.

Moreover, NENMRL fails to give record support for its assertion that the fifteen percent incremental increase it used was "commercially reasonable" and "based on actual experience and projections within the solid waste industry." Our review of the record shows that NENMRL's application did not provide any reason

17

at all for its use of a fifteen percent annual increase in its calculations. We cannot say that the Secretary's decision was arbitrary and capricious simply because he reached a different conclusion than the one provided by NENMRL. *See N.M. Mining Ass'n v. Water Quality Control Comm'n*, 2007-NMCA-084, ¶ 29, 142 N.M. 200, 164 P.3d 81 ("Even if a different conclusion might have been reached from the facts, the choice made [by an administrative agency] is not arbitrary or capricious if exercised honestly and upon due consideration." (alteration omitted) (internal quotation marks and citation omitted)).

**2. The Secretary's Finding That NENMRL Failed to Provide Adequate Individual Notice to Interested Parties**

NENMRL next challenges the Secretary's finding that it failed to provide adequate individual notice to adjacent landowners and other interested parties regarding the "quantity, rate, type , as well as the origin of the [special] waste" it was proposing to accept at the landfill, in violation of agency regulations in effect at the time. As we understand NENMRL's argument, it contends that in finding that regulatory notice requirements were not met, the Secretary also made an "unstated finding" that the interested parties' procedural due process rights were violated. Relying on this unstated finding, NENMRL appears to argue that even if there was a purported deficiency in the individual notice letters, the procedural due process rights

18

of the interested parties were not violated and, therefore, the Secretary erroneously denied the special waste permit on the basis of inadequate notice.

NENMRL's argument is premised on a contention that this Court differentiated between statutory notice requirements and procedural due process in *Martinez*, 2003-NMCA-043, ¶ 13. On the basis of this asserted difference, NENMRL argues only that the interested parties' due process rights were protected without challenging the Secretary's express finding that the individual notice letters failed to meet notice requirements.

We are unpersuaded by NENMRL's argument for two reasons. First, we have found no evidence in the record, nor has NENMRL pointed to any, showing that the Secretary or the hearing officer made any findings regarding possible due process violations on the basis of the notice provided by NENMRL during the permitting process. Rather, the hearing officer's report concluded only that the notice failed to meet regulatory requirements without referring to any possible due process issues. Accordingly, we are hesitant to attribute an implicit finding to the Secretary regarding due process in the absence of an express finding. *Cf. Atlixco*, 1998-NMCA-134, ¶¶ 20, 21 (stating that "the reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given" and that "the [s]ecretary's decision stands

or falls on its express findings and reasoning" (alteration omitted) (internal quotation marks and citation omitted)).

Second, we disagree with NENMRL's characterization of *Martinez* as establishing that a due process analysis is required in cases where the sufficiency of notice is at issue. In *Martinez*, we reversed the grant of a special waste permit to NENMRL for the same facility at issue here on the basis of a failure to substantially comply with statutory notice requirements. 2003-NMCA-043, ¶ 13. We determined that NENMRL's failure to publish notice of its permit application in two separate locations within local newspapers was a violation of statutory notice requirements under the Act. *Id.* ¶¶ 7-9. We then relied on *Nesbit v. City of Albuquerque*, 91 N.M. 455, 575 P.2d 1340 (1977), to hold that NENMRL's failure to substantially comply with statutory notice requirements rendered all subsequent administrative proceedings invalid, thereby requiring reversal of the Secretary's decision in those proceedings to grant a special waste permit to the facility. *Martinez*, 2003-NMCA-043, ¶ 13. We remanded the case for new proceedings to take place after proper notice was provided regarding the requested special waste modification. *Id.*

Contrary to NENMRL's position, *Martinez* never explicitly discussed due process, and the opinion did not address the interplay between statutory notice violations and due process. In fact, this Court declined to address a standing argument

20

raised in *Martinez* because it "confuse[d the a]ppellants' due process right to individual notice with . . . [the] statutory requirement of notice to the general public [of a waste permit application]." 2003-NMCA-043, ¶ 15. We further stated that NENMRL's failure to meet statutory notice requirements in that case could not be "rendered harmless as a matter of law by the fact that [the a]ppellants and a number of other residents of the area attended the hearing and expressed their lay concerns." *Id.* ¶ 17. Thus, to the extent that NENMRL makes due process arguments on appeal in this case—that the interested parties had actual knowledge of the hearing and that individual notice letters were not misleading or prejudicial—we are not persuaded. These actions, even if they were substantiated by the record, would not render harmless the failure of NENMRL to meet regulatory notice requirements. This is consistent with the underlying policy rationale behind *Martinez*—that the failure to comply with statutory and/or regulatory notice requirements is a serious deficiency in the permitting process requiring stark consequences because it effectively precludes the right of interested parties to meaningfully participate in the hearing process and to insure that their concerns regarding proposed permit modifications are heard. *Id.* ¶¶ 15, 18-19; *see Colonias*, 2005-NMSC-024, ¶¶ 21-22 (discussing *Martinez* and the legislative policy favoring the public's right to participate meaningfully in a landfill permitting process).

*Martinez* does not stand for the principle that meeting the interested parties' due process rights under the circumstances presented in this case would act as a cure for a statutory/regulatory notice violation.  As an aside, we recognize that our reliance on *Nesbit* in *Martinez* could have been construed as a signal to NENMRL in this case that procedural due process is a consideration in cases where notice concerns are raised in administrative proceedings.  *See Nesbit*, 91 N.M. at 459, 575 P.2d at 1344 (stating that the failure to comply with statutory notice procedures in zoning ordinance proceedings was a violation of "due process of law . . . and [that] no subsequent act could correct the defect"); *see also Eldorado at Santa Fe, Inc. v. Cook*, 113 N.M. 33, 36, 822 P.2d 672, 675 (Ct. App. 1991) (relying on *Nesbit* to hold that the failure to give proper statutory notice of an administrative permitting proceeding was a due process violation), *abrogated on other grounds by Goodloe v. Bookout*, 1999-NMCA-061, 127 N.M. 327, 980 P.2d 652.  However, these cases only serve to establish the importance of meeting notice requirements under a statute or its implementing regulations and the consequence for failing to do so.  It stands to reason that if this Court can reverse the grant of a special waste permit on the basis of statutory notice violations, as we did in *Martinez*, there is no error on the part of the Secretary in denying a special waste permit in this case on the same basis, irrespective of any of the flexible procedural due process considerations NENMRL has asserted

22

in this case. *See also* II Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.1, at 736 (5th ed. 2010) ("Once an agency adopts a set of procedures by rule, the agency must comply with its own procedural rules even if the procedures adopted by the agency exceed those independently required by due process.").

Accordingly, we decline to review the Secretary's order for possible error as to an "unstated" procedural due process violation, and we remain unconvinced that any determination on appeal by this Court that procedural due process was not violated would overcome the Secretary's determination that NENMRL failed to meet regulatory notice requirements. Because NENMRL has not argued that the Secretary erred in determining that the individual notice letters failed to comply with regulatory notice requirements regarding the special waste permit modification, we do not disturb that finding on appeal.

**3. The Secretary's Findings Regarding NENMRL's History of Noncompliance with Existing Permit Conditions and Applicable Regulations**

NENMRL also challenges the Secretary's denial of the special waste permit modification on the basis of the following conclusions regarding its compliance history: that (1) it "ha[d] a history of failing to submit reports and failing to comply with conditions previously imposed by the [NMED] Solid Waste Bureau," as required by 20.9.1.200(L)(16) NMAC; (2) it had a "history of violations issued by the [NMED]

23

Air Quality Bureau"; and (3) it failed to include in its permit application a full discussion of its history of violations. NENMRL argues that in reaching these conclusions, the Secretary also made an unstated conclusion that NENMRL's compliance history indicated a willful disregard for New Mexico's environmental laws, in direct violation of Section 74-9-24(B)(5). NENMRL claims that it has not exhibited a willful disregard for environmental laws because its only compliance-related issues have been "*de minimis* inspection infractions" and the filing of reports to a mis-identified individual at the Air Quality Bureau.

Before reaching the merits of NENMRL's arguments, we first address the parties' dispute regarding the applicable standard governing this issue. NENMRL argues that we should apply the statutory-based willful disregard standard due to the Secretary's "presumed" yet "unstated" conclusion that NENMRL has exhibited a willful disregard for state environmental laws. However, NMED and Concerned Citizens disagree that the Secretary applied a willful disregard standard below; instead, they argue that we need only consider the solid waste regulations and the discretionary grounds for denying a permit included in the regulations. Specifically, they refer us to 20.9.1.200(L)(16) NMAC, which provides a number of circumstances under which the Secretary has "cause" to deny a permit application. In relevant part, NMED points to two circumstances that were cited by the Secretary in one of the

24

contested conclusions above: "(a) noncompliance by the permittee with any condition of the permit" and "(d) the applicant's failure to demonstrate a knowledge and ability to operate a facility in accordance with [the regulations] or a history of non[]compliance with environmental regulations or statutes at other facilities." 20.9.1.200(L)(16)(a), (d) NMAC.

We conclude that we need only look to the regulatory framework in our analysis of the parties' arguments concerning the Secretary's compliance-related conclusions. We do so primarily because NENMRL has failed to point to any express finding of fact or conclusion of law in the Secretary's final order explicitly stating that NENMRL has exhibited a willful disregard for environmental laws. To the contrary, NENMRL itself acknowledged in its briefing that it considered this an "unstated" and "presumed" conclusion only. We decline to attribute a conclusion to the Secretary that was not expressly raised in the final order. *See Atlixco*, 1998-NMCA-134, ¶ 20 ("When the Legislature specifically directs the [s]ecretary to state the reasons for an administrative action, the reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given." (internal quotation marks and citation omitted)). Although NENMRL claims in its reply brief that the final order refers to the "willful disregard" standard as a standard applicable to the permitting proceedings, this reference is made in a section describing the Secretary's general

powers under the Act and does not appear in any specific findings of fact or conclusions of law reached by the Secretary as to NENMRL's compliance history. The Secretary's relevant findings and conclusions concerning compliance rely upon and cite to the regulations only. Accordingly, because there is no indication that the Secretary expressly considered or applied a "willful disregard" standard, we review the conclusions at issue here under the discretionary grounds set forth in the solid waste regulations that give the Secretary cause to deny a permit application. *See* 20.9.1.200(L)(16) NMAC.

We have previously set out the following standard for reviewing the Secretary's denial of a permit application based on the grounds provided in 20.9.1.200(L)(16) NMAC. We decide "whether the Secretary abused his discretion or acted unreasonably" in concluding that a permit applicant's past compliance problems were "severe enough to warrant a discretionary denial of the new permit." *Pickett Ranch*, 2006-NMCA-082, ¶ 36. In other words, because "the Secretary is in the best position to determine what constitutes . . . a history of non[]compliance sufficient to warrant the discretionary denial of a permit," we will affirm the Secretary's decision as long as it is supported by substantial evidence and is not unreasonable or an abuse of discretion. *Id.* ¶ 37 (internal quotation marks omitted). We do not reweigh the facts in evaluating the Secretary's exercise of his discretion. *Id.* In addition, because the

"Secretary is . . . in the best position to consider more global policy concerns that might weigh against or in favor of granting a permit," we will consider any policy considerations taken into account by the Secretary in our review. *Id.* ¶ 44.

**a.      Air Quality Bureau Notice of Violation**

With this framework in mind, we first address NENMRL's arguments directed to the Secretary's conclusion that NENMRL had a history of violations issued by the NMED Air Quality Bureau. This conclusion was based on the Secretary's finding of fact that on August 12, 2004, NENMRL received a notice of violation (NOV) from the Air Quality Bureau due to its failure to submit "monitoring activities [reports,] . . . annual emission reports[,] . . . and compliance certification reports" within the permitted time frames set by statute. The Secretary also entered findings that the NOV was settled with a monetary penalty of $17,280 and that NENMRL had failed to include any information pertaining to this settlement in its permit application. NENMRL argues that the reports were actually timely filed but incorrectly submitted to the wrong administrative contact at the Air Quality Bureau. It contends that the Air Quality Bureau verified that this was the case and, as a result, it had not required any corrective actions on the part of NENMRL.

We are unpersuaded by NENMRL's position because several aspects of the administrative record support the Secretary's conclusion that an NOV was issued due

27

to NENMRL's failure to timely file reports with the Air Quality Bureau. First, NENMRL admitted in its permit application that the reports were filed late: "[the NOV was] in regards to late reporting of monitoring activities (due in April and October each year), Annual NMDC emission reports (due in October), and Compliance Certification reports (due in October). *These reports were submitted; however, not by the due dates*." (Emphasis added.) Second, the NOV letter issued by the Air Quality Bureau to NENMRL also confirmed the late submission of the reports; significantly, the letter stated that *eight* different reports from calendar years 2002 and 2003 had been submitted anywhere from 113 to 309 days late to the Air Quality Bureau. Third, the Solid Waste Bureau chief testified that she spoke to a representative from the Air Quality Bureau during the course of her review of NENMRL's application and that the representative had confirmed the late submission of reports as well as the subsequent case settlement. Thus, based on the foregoing, it appears that substantial evidence existed to support the Secretary's conclusion that NENMRL had a history of violations with the Air Quality Bureau.

To the extent that NENMRL argues that the Air Quality Bureau verified that the reports were timely submitted but sent to the wrong individual at the Air Quality Bureau, we are unpersuaded. As support for this argument, NENMRL relies on testimony elicited at the public hearing from the landfill's general manager. While

discussing the NOV, NENMRL's general manager testified that the landfill had "misfiled some reports over the previous couple years" and that the reports had been "submitted to someone within the Department instead of the director of the [Air Quality] Bureau[,] as [required by] the [landfill's] permit." However, aside from this testimony, there was no evidence in the record from the Air Quality Bureau itself confirming that the reports were sent to the wrong individual. The NOV letter, which was the only purported document in the administrative record from the Air Quality Bureau itself, made no mention of the reports being submitted to the wrong individual. Thus, we conclude that it was not unreasonable or an abuse of discretion for the Secretary to disregard the testimony from NENMRL's general manager in light of the other evidence previously mentioned supporting the history of reporting violations. Substantial evidence existed in the record upon which the Secretary could have based his conclusion that NENMRL has a history of violations from the Air Quality Bureau.

**b.      History of Noncompliance with Existing Permit Conditions and the Failure to Submit Reports to the Solid Waste Bureau**

Next, NENMRL argues that the Secretary erroneously concluded that the landfill had a history of noncompliance with existing permit conditions and a history of failing to submit reports to the Solid Waste Bureau. These conclusions were based on the Secretary's finding that, although NENMRL had not been issued any administrative compliance orders or penalties related to compliance matters, the Solid

29

Waste Bureau had issued two letters of inspection to the landfill for failure to comply with regulations and/or existing permit conditions. The first inspection letter was issued due to the failure to control run-off water on site, and the second letter related to NENMRL's failure to provide its vadose zone detection monitoring records to the Solid Waste Bureau. The Secretary also entered a finding that once the vadose monitoring records were provided, the Solid Waste Bureau discovered that NENMRL had not undertaken water level measurements for over three years. On appeal, NENMRL contends that the inspection letters were simply "*de minimis* infractions" or "trifles" which NENMRL promptly corrected "to the satisfaction of the [Solid Waste] Bureau."

We conclude that the contested findings above are supported by substantial evidence. NENMRL included in its application eleven inspection reports issued by the Solid Waste Bureau, ranging from calendar years 1998 to 2004. Three of these reports raised regulatory violations such as the presence of litter and ponding of water. The application also included the first letter of inspection concerning run-off water that was relied upon by the Secretary in the contested findings of fact above. Although NENMRL argues that it responded to this inspection letter "to the satisfaction of the [Solid Waste] Bureau," our review of the application and hearing testimony fails to substantiate this contention. Aside from the letter sent by NENMRL to the Solid

Waste Bureau asserting that the inspection letter had been issued in error, we did not find any response from the Solid Waste Bureau acknowledging any error. In addition, Concerned Citizens provided, as an exhibit at the hearing, a number of additional inspection reports that listed a variety of other issues, as follows: litter in leachate collection ponds, water run-on and ponding issues, failure to control run-on and run-off water on site, and a failure to provide records of vadose zone detection monitoring upon request. The last two issues resulted in the letters of inspection that the Secretary referenced in his findings of fact above. Finally, there was testimony at the hearing from the Solid Waste Bureau chief and employees, which confirmed the letters of inspection. Thus, based on the foregoing, we conclude that there was substantial evidence supporting the Secretary's conclusion that NENMRL had a history of noncompliance with regulations and conditions imposed in its existing permit.

NENMRL essentially urges this Court to reweigh the facts relied on by the Secretary to reach his conclusions regarding the landfill's compliance history and determine instead that the violations addressed above were only trifles with no environmental consequences. However, as we have previously stated, "in the absence of a showing of unreasonableness, we will defer to the [Secretary's] interpretation of what constitutes a history of non[]compliance severe enough to warrant the

discretionary denial of a permit." *Pickett Ranch*, 2006-NMCA-082, ¶ 43 (internal quotation marks omitted). NENMRL has not demonstrated that the Secretary abused his discretion or acted unreasonably in determining that the landfill had a history of noncompliance. We defer to the Secretary's determination that the violations were severe enough to merit the denial of the special waste permit. Moreover, "not only is the Secretary in the best position to consider what level of past non[]compliance with the regulations is sufficient to warrant permit denial, . . . the Secretary is also in the best position to consider more global policy concerns that might weigh against or in favor of granting a permit." *Id.* ¶ 44. Here, the Secretary considered testimony from the Solid Waste Bureau chief that the Bureau relies largely on self-reporting by landfill facilities regarding compliance-related matters because the Bureau has limited resources to conduct frequent inspections and to more directly enforce the regulations. The chief further testified that she had concerns and reservations regarding the issuance of the special waste permit due to the landfill's poor history of self-reporting. The Secretary weighed NENMRL's past failures to self-report, as evidenced by the NOV issued by the Air Quality Bureau and the failure to submit vadose zone monitoring records, against the concern that self-reporting is even more critical where special waste is concerned, given its unique handling requirements. Given the Secretary's position, we defer to his determination that the violations were severe

32

enough to deny the special waste permit modification in light of the reporting concerns that were raised.

**c.      NENMRL's Failure to Fully Disclose Its History of Violations in the Permit Application**

We briefly address NENMRL's argument that the Secretary erroneously determined that the permit application contained an incomplete history of its violations. Our review of the permit application confirms the Secretary's findings that the application: (1) failed to include any information regarding the settlement reached between the Air Quality Bureau and the landfill, and (2) failed to include the letter of inspection issued by the Solid Waste Bureau regarding vadose zone monitoring records.  Although NENMRL argues that it was not required to include the vadose zone letter of inspection because it was issued months after the  application was submitted, we note that the application was not deemed complete until a year later on May 11, 2007.  Thus, NENMRL had the opportunity to supplement its application with any missing compliance-related documents, and we think that this was its burden under the regulations.  *See* 20.9.1.200(L)(20) NMAC (stating that a permit renewal application shall address the compliance history of the applicant); *see also* 20.1.4.400(A)(1) NMAC (stating that the applicant has the burden of proof as to whether a permit should be issued and that this burden does not shift).

33

In summary, based on our review of the record, we hold that the Secretary's decision to deny the special waste permit modification on the basis of NENMRL's compliance history was supported by substantial evidence and was neither unreasonable nor an abuse of discretion.

**4. Issuance of the Secretary's Final Order on the Same Date as the Hearing Officer's Report**

NENMRL argues that the Secretary failed to undertake a meaningful review of the administrative record and the hearing officer's report prior to issuing the final order denying the special waste permit modification. NENMRL contends that the fact the final order was issued on the same date as the hearing officer's report indicates that the Secretary failed to give individualized attention to the voluminous administrative record before him. NENMRL further alleges that had the Secretary undertaken meaningful review of the record prior to rendering a decision, he would have encountered evidence demonstrating that NENMRL had "exceeded the statutory and regulatory requirements for a special waste permit, and that the [h]earing [o]fficer's [r]eport itself was internally inconsistent."

The burden is on NENMRL to present affirmative evidence to support its claim that the Secretary failed to consider the evidentiary record prior to issuing the final order. *See Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 35; *Pickett Ranch*, 2006-NMCA-082, ¶ 56. "Mere allegation that the [Secretary] did not

34

consider the entire record is insufficient." *Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 35 (alterations omitted) (internal quotation marks and citation omitted).

We conclude that NENMRL has failed to meet its burden. NENMRL has not claimed that the filing date of the final order violates any applicable regulatory provisions that set forth the filing deadlines for such an order. We presume therefore that the final order was filed in accordance with all applicable deadlines. *See* 20.9.1.200(L)(12) NMAC (requiring the Secretary to issue or deny a permit application within 180 days after the application is deemed complete); 20.1.4.500(D) NMAC (requiring the Secretary to file a final order within thirty days of the filing of the hearing officer's report or, if applicable, the date of any subsequent comment/argument period following issuance of the hearing officer's report).

Although the final order adopted the hearing officer's report in its entirety, there is no evidence indicating that the Secretary did not conduct meaningful review of that report or the administrative record prior to issuing the order. To the contrary, the final order includes a statement that the Secretary "considered the administrative record in its entirety, including the [p]roposed [f]indings . . . submitted by the [parties]… and the [h]earing [o]fficer's [r]eport and [p]roposed [f]indings" prior to rendering a decision. We are not persuaded that the issuance of the order on the same date as the

hearing officer's report negates this express statement by the Secretary or that it somehow implies that the Secretary failed to consider the entire record, including any alleged evidence supporting NENMRL's application.

Furthermore, we observe that the administrative record, with the sole exception of the hearing officer's report, was filed and docketed with the hearing clerk of the NMED prior to December 17, 2007, the date of the final order. In relevant part, the transcripts from the five-day hearing were filed on October 3, 2007, and the parties' closing arguments and proposed findings of fact were filed on November 13, 2007. Thus, the Secretary had the opportunity to review the record prior to reaching his decision and, in the absence of any contrary evidence establishing that he failed to do so, we will not presume any irregularity in his actions. *See State ex rel. Reynolds v. Aamodt*, 111 N.M. 4, 6, 800 P.2d 1061, 1063 (1990) ("On review of the acts or orders of administrative bodies, the courts will presume, among other things, that the administrative action is correct and that the orders and decisions of the administrative body are valid and reasonable; presumptions will not be indulged against the regularity of the administrative agency's action." (internal quotation marks and citation omitted)). Accordingly, we hold that the Secretary did not act arbitrarily or capriciously in this regard.

**5.    The Secretary's Conclusion That NENMRL Failed to Address or Respond to Legitimate Public Concerns Regarding the Special Waste Permit Modification**

NENMRL challenges the Secretary's denial of the special waste permit modification on the basis that NENMRL "failed to address or respond to legitimate concerns raised by the public regarding ordinary concerns of adverse societal impact, social well-being and quality of life in the community" as specifically tied to the effects of such a modification.    NENMRL argues that: (1) the administrative proceedings exceeded the public participation requirements established by our Supreme Court in *Colonias*; (2) it adequately addressed public concerns throughout the entire permitting process; and (3) the Secretary's final order failed to identify a nexus, as required under *Colonias*, between the public concerns raised at the hearing and the applicable solid waste regulations.

Because NENMRL's arguments on this issue center around *Colonias*, we begin by describing the circumstances of that case and our Supreme Court's holding there. *Colonias* involved a permit application filed with NMED for a new landfill operation to be located in Chaparral, New Mexico, an unincorporated community that already had four waste disposal facilities located in its near vicinity.  2005-NMSC-024, ¶¶ 2, 9.  During a public hearing concerning the permit application, an NMED-appointed hearing officer heard testimony from the applicant and various technical witnesses;

37

she also took comments and testimony from over 300 members of the general public, the vast majority of whom testified in opposition to the building of another landfill in Chaparral. *Id.* ¶¶ 3-4. Despite this overwhelming public opposition, the hearing officer recommended and the Secretary granted a permit for a ten-year period after determining that the application complied with all technical requirements listed in the solid waste regulations. *Id.* ¶ 6. A nonprofit community organization appealed the Secretary's decision, arguing that the hearing officer and, in turn, the Secretary, had erroneously refused to consider the public's non-technical testimony regarding quality of life concerns and the adverse effects of proliferation of landfills on their community in reaching the final decision. *Id.* ¶¶ 7-9. The appellant argued that it was error for the Secretary to approve a landfill permit solely based on whether the permit application complied with technical requirements established by the Act and its implementing regulations. *Id.* ¶ 10.

The Supreme Court reversed the Secretary's decision, holding that public participation is a critical and meaningful aspect of the permitting process, as established by the Legislature through the applicable statutory and regulatory schemes. *Id.* ¶ 24. Therefore, the Court held that the Secretary should consider public concerns about "adverse impacts on social well-being and quality of life" in reaching a decision regarding a permit application and that he must also determine whether the

"lay concerns [expressed by the general public] relate to violations of the . . . Act and its regulations." *Id.* The Court further reasoned that although the Secretary "must allow testimony regarding the impact of a landfill on a community's quality of life, . . . the [Secretary's] authority to address such concerns requires a nexus to a regulation." *Id.* ¶ 29. Applying this holding to the facts of the case, the Supreme Court held that "the Secretary abused his discretion by limiting the scope of testimony during the public hearing and [by] interpreting the Department's role as confined to technical oversight." *Id.* ¶ 27. The Court then determined that a nexus existed between the public concerns raised at the hearing and applicable solid waste regulations:

> [W]e do find that quality of life concerns expressed during the hearing bear a relationship to environmental regulations the [s]ecretary is charged with administering. Although both parties refer to the issues on appeal in a wide variety of ways, including "social impact," "sociological concerns," "social well-being," and "environmental justice," we believe there are legitimate concerns at the core of [the appellant's] claim that are within the purview of the [s]ecretary's oversight role. Contrary to the Department's position, the impact on the community from a specific environmental act, the proliferation of landfills, appears highly relevant to the permit process.

*Id.* ¶ 30. The Court reasoned that if the concerns expressed at the hearing regarding proliferation of landfills had "an identified effect on the community's development and social well-being, it [was] not an amorphous general welfare issue, but an environmental problem" and, therefore, the lay testimony regarding proliferation was

39

"relevant within the context of environmental protection[s] promised in the . . . Act and its regulations." *Id.* ¶ 32. The Court reversed the granting of the permit and remanded the case to the Secretary "to consider whether evidence of the harmful effects from the cumulative impact of industrial development rises to the level of a public nuisance or potential hazard to public health, welfare or the environment. *Id.* ¶ 34.

We address NENMRL's arguments in the context of the *Colonias* decision. NENMRL contends that the administrative permitting process in this case exceeded the public participation requirements set forth in *Colonias* on two grounds. First, NENMRL argues that its application and the testimony from NENMRL technical witnesses at the hearing "unquestionably satisfie[d] the non-proliferation requirements approved by the Supreme Court in [*Colonias*]" and subsequently adopted in the 2007 version of the solid waste regulations. Second, NENMRL asserts that it "satisfied [*Colonias*] by voluntarily facilitating meaningful public participation in the permitting process." As to the first ground, we are unpersuaded by NENMRL's argument because the issue before the Supreme Court in *Colonias* was not the approval of non-proliferation requirements but, rather, whether the Secretary had erred in refusing to consider the lay concerns raised by the general public, which in that case happened to center around the proliferation of industrial sites. 2005-NMSC-024, ¶¶ 11-12. The

*Colonias* decision did not create a baseline rule requiring permit applicants to address non-proliferation requirements. Thus, NENMRL's position that it met non-proliferation requirements established by the 2007 version of the solid waste regulations is misplaced. We also are not convinced that NENMRL's second argument—that it voluntarily facilitated "meaningful public participation in the permitting process"—has sufficient relevancy. There is no real question in this case that the hearing officer in fact allowed public participation at the hearing, as envisioned by *Colonias*. The parties do not dispute any aspect of the hearing officer's decision to allow lay testimony at the hearing; rather, the parties dispute the Secretary's subsequent decision to include the lay concerns as a specific basis for the denial of special waste permit modification. Moreover, even if we were to address NENMRL's argument, we conclude that it failed to facilitate meaningful public participation in the permitting process, as evidenced by the Secretary's determination, which we have affirmed on appeal, that NENMRL failed to comply with individual notice requirements set forth in the solid waste regulations.

We turn then to address the only dispositive question on this issue: whether the Secretary was permitted under *Colonias* to address the public concerns raised at the hearing in his final order as an additional basis for his denial of the special waste permit modification. We conclude that it was not error. Unlike the circumstances in

41

*Colonias*, where the application at issue had met all technical requirements under the solid waste regulations, the Secretary determined in this case that NENMRL's application failed to meet several technical requirements with respect to the special waste permit modification. In relevant part, these included the failure to meet regulatory requirements concerning individual notice as to the origin and source of special wastes; the lack of specific estimates for anticipated volumes and frequency of special waste disposal in the application; failure to submit inspection reports and a poor compliance history with existing permit conditions. Our review of the lay comments and testimony given at the hearing confirms the Secretary's view that the majority of concerns raised at the public hearing pertained to the special waste permit modification and reiterated the technical deficiencies in NENMRL's application. The Secretary identified the following nexus between the public's concerns and the regulatory requirements:

> [T]he majority of the concern about the special waste permit was of the unknown factors such as the specific content of the special waste, the source of the special waste, how special waste would be handled, the identity and the qualifications of individuals expected to handle the special waste, and how specific types and amounts of special waste might impact the local environment, health and quality of life[.]

Contrary to NENMRL's position that the Secretary failed to identify a nexus between the concerns and actual regulatory requirements, we think the above accurately reflects a nexus between the public concerns raised at the hearing and regulatory

42

requirements. *See, e.g.*, 20.9.1.200(F)(1)-(3) NMAC (requiring a permit application to include, among others, "a complete description of the types of wastes to be accepted[,]" "the anticipated amount and frequency of disposal of the wastes[,]" and "the method of disposal").

In a final effort to counter the public concerns raised by the Secretary in his final order, NENMRL asserts that testimony from its technical witnesses adequately addressed all public concerns. However, our role as the reviewing court is not to reweigh the facts and evidence before the Secretary. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127-28, 767 P.2d 363, 366-67 (Ct. App. 1988) (noting that even under whole record review, "[a] reviewing court may not reweigh the evidence," but should only determine whether, in light of the whole record, the result reached is reasonable), *modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 27, 131 N.M. 272, 34 P.3d 1148. The burden of persuasion was on NENMRL below, and the Secretary was in the best position to weigh the testimony and evidence submitted by NENMRL against the technical requirements and any concerns raised by the public that bore a nexus to the solid waste regulations.

Based on the foregoing, we conclude that the Secretary considered the public concerns raised at the hearing in accordance with *Colonias* and that it was not improper for him to rely on community concerns as an additional basis for denying

43

the permit modification for special wastes. *See Colonias*, 2005-NMSC-024, ¶ 26 (emphasizing that "community concerns *can* affect the [s]ecretary's decision to deny a permit or impose conditions on one").

**6.      The Secretary's Conclusions Regarding Herzog and Its Employees**

NENMRL challenges the Secretary's findings regarding Herzog, the operator of the landfill, and its employees. NENMRL asserts that the Secretary acted contrary to law in concluding that: (1) the Solid Waste Bureau failed to investigate Herzog and its compliance history, despite concerns raised by the community; (2) NENMRL failed to submit a disclosure statement for a particular Herzog employee, who was the only individual certified to handle asbestos, a specific type of special waste; and (3) NENMRL was highly dependent on Herzog's expertise in the handling of special waste. NENMRL contends that neither the Act nor its implementing regulations require NENMRL, as the permit applicant, or the Solid Waste Bureau to investigate and/or obtain disclosure statements from third-party operators and their employees. Accordingly, it argues that the Secretary acted contrary to law and imposed *ultra vires* requirements in his findings of fact and conclusions regarding Herzog and its employees.

Our resolution of this issue turns on a question of statutory interpretation. We must determine whether the Act or its implementing regulations require applicants

44

and/or the Solid Waste Bureau to investigate or obtain disclosure statements for third-party operators as part of the application process. NENMRL's primary argument is that the Secretary erroneously determined that these actions were required under the Act and the solid waste regulations.

Interpretation of a statute is a question of law, which we review de novo on appeal. *In re Camino Real Envtl. Ctr., Inc.*, 2010-NMCA-057, ¶ 12, 148 N.M. 776, 242 P.3d 343. When presented with a question of statutory interpretation, we rely on the following general principles:

> (1) the plain language of the statute is the primary indicator of legislative intent; (2) we will not read into a statute language which is not there, particularly if it makes sense as written; (3) we will give persuasive weight to long-standing administrative constructions of statutes by the agencies charged with administering them; and (4) when several sections of a statute are involved, they must be read together so that all parts are given effect.

*Id.* Likewise, we observe that "[t]he canons of statutory construction guide our interpretation of administrative regulations." *Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 51. Finally, "[a]lthough we are not bound by an agency's interpretation of statutes and rules because it is the function of the courts to interpret the law, we afford administrative agencies considerable discretion to carry out the purposes of their enabling legislation, and we give deference to an agency's interpretation of its own regulations." *Phelps Dodge Tyrone, Inc. v. N.M. Water*

45

*Quality Control Comm'n*, 2006-NMCA-115, ¶ 25, 140 N.M. 464, 143 P.3d 502 (internal quotation marks and citations omitted).

Section 74-9-21(A) of the Act covers the disclosure and investigatory requirements applicable to a landfill permit application. It states that "[e]very *applicant* for a permit *shall* file a disclosure statement with the information required by and on a form developed by [NMED] at the same time he files his application for a permit." Section 74-9-21(A) (emphasis added). The section further states that the Secretary "*may* also request information . . . regarding any person who will be or could reasonably be expected to be involved in management activities of the solid waste facility or any person who has a controlling interest in any permittee." Section 74-9-21(B) (emphasis added). In relevant part, Section 74-9-3 of the Act, which provides definitions for terms used, does not include a definition for "applicant" or for "operator." Section 74-9-3. Finally, we observe that the Act gives the Secretary the authority to deny a permit application "if he has reasonable cause to believe that any person required to be listed on the application . . . has[] refused to disclose or failed to disclose the information required under . . . Section 74-9-21." Section 74-9-24(B)(2).

As for the solid waste regulations, they require that that "[a]ny person seeking a permit" file an application which includes, among other items, "a disclosure

statement consistent with Section 74-9-21 of [the Act]." 20.9.1.200(A)(2)(f) NMAC. The regulations also include an extensive definition section. 20.9.1.7 NMAC. Although no definition for applicant is included, the word "operator" is defined as the "person(s) responsible for the overall operation of all or any portion of a solid waste facility," and the word "owner" is defined as the "person(s) who owns the facility or part of a solid waste facility." 20.9.1.7(BC), (BD).

We begin by describing the basis for the Secretary's interpretation of Section 74-9-21 of the Act and the above regulations. In her report, the hearing officer recommended and the Secretary adopted a conclusion of law stating that NENMRL had failed to provide a disclosure statement for a particular Herzog employee. The hearing officer further determined that the Bureau failed to exercise its "discretionary authority" under Section 74-9-21(B) to investigate Herzog, given its role as an entity "who will be or could reasonably be expected to be involved in management activities of the solid waste facility." On the basis of this determination, the Secretary adopted an additional conclusion of law that the Bureau "failed to investigate the background of Herzog . . . and its compliance history." NENMRL challenges both of these conclusions.

Applying our rules of statutory interpretation, we hold that the Secretary erroneously concluded that Section 74-9-21(A) of the Act required NENMRL to

47

submit disclosure statements for Herzog employees. Under the plain meaning rule, we find the language: "[e]very *applicant* for a permit *shall* file a disclosure statement . . . at the same time he files his application for a permit" in Section 74-9-21(A) to be clear and unambiguous. (Emphasis added.) *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (stating that the plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous). Although the word "applicant" is not separately defined in the Act, the plain language of Section 74-9-21(A) unambiguously considers an applicant to be an individual who "files his application for a permit." *Cf. Blacks Law Dictionary* 115 (9th ed. 2009) (defining "applicant" as "[o]ne who requests something"). Here, it is undisputed that NENMRL was the only entity to file an application for a permit with NMED, and thus, the Legislature's use of the word "shall" in 74-9-21(A) imposed a mandatory requirement only on NENMRL to submit a disclosure statement along with its application. This mandatory requirement could not have been imposed on Herzog or its employees because Herzog did not file the permit application at issue in this case.

In addition, we read all provisions under Section 74-9-21 together to ascertain the Legislature's intent regarding disclosure statements. *Medina v. Holguin*, 2008-NMCA-161, ¶ 14, 145 N.M. 303, 197 P.3d 1085 ("Based on the statutory canon of

48

construction, *noscitur a sociis*, a court must look to the neighboring words in a statute to construe contextual meaning."). In so doing, we conclude that the Legislature included another provision in the Act, Section 74-9-21(B), to address disclosure requirements and investigations of individuals other than the applicant. The following language in Section 74-9-21(B)—stating that the Secretary "*may* also request information . . . regarding any person who will be or could reasonably be expected to be involved in management activities of the solid waste facility"—unambiguously gives NMED and the Solid Waste Bureau discretionary authority to investigate others who may be intimately involved in a landfill operation. Thus, it is clear that the Legislature intended a mandatory disclosure requirement for applicants only but gave discretion to the Solid Waste Bureau to also investigate and seek disclosure requirements for operators and landfill managers such as Herzog. We conclude that the failure of the Solid Waste Bureau to exercise its discretionary authority under Section 74-9-21(B) could not be attributed to an applicant such as NENMRL as a basis for permit denial.

Our interpretation of the Act is further supported by the regulations governing permitting procedures for NMED. *See* 20.1.4 NMAC (setting forth procedural regulations for public hearings before the Environment Department involving, among others, permit issuance and renewal applications). These regulations define

49

"'[a]pplicant'" as "any person whose application for a permit, renewal or modification to a permit, or license is the subject of the proceeding." 20.1.4.7(A)(3) NMAC.

Based on the foregoing, we interpret Section 74-9-21 of the Act to require only those individuals who file a permit application to submit to the Act's mandatory disclosure requirements. Accordingly, the Secretary's conclusion that NENMRL failed to submit a disclosure statement for a particular Herzog employee was erroneous, as was the Secretary's conclusion regarding the Solid Waste Bureau's failure to investigate Herzog and its compliance history. However, because the Secretary's denial of the special waste permit modification is amply supported by any of the other reasons discussed in this opinion, we affirm the Secretary's final order. *See Atlixco*, 1998-NMCA-134, ¶ 28.

## C. CROSS-APPEAL

In the cross-appeal, Concerned Citizens challenges the Secretary's final order insofar as it grants NENMRL a permit modification for the acceptance of municipal solid waste via rail transport. At the public hearing, Concerned Citizens argued for the denial of this permit modification for two primary reasons. First, it argued that NENMRL had committed a prohibited act under the solid waste regulations by accepting waste by rail in the past from a rail company that was not registered with NMED, and that this activity occurred without a permit condition or modification authorizing such acceptance. Second, it asserted that NENMRL's current permit application was incomplete because its "anticipated commercial hauler of waste by rail" was the same unregistered rail company; Concerned Citizens argued that registration was required under the solid waste regulations. It asserted that the past violation coupled with the present failure of NENMRL's "anticipated commercial hauler by rail" to register with NMED was adequate grounds for denying the permit modification to accept waste by rail transport.

On appeal, Concerned Citizens contends that the Secretary failed to address these arguments because he improperly disclaimed his jurisdiction over regulating the transport of waste by rail. Our review of the record does not support this characterization of the Secretary's determination. It appears that the Secretary

51

addressed Concerned Citizens' arguments on their merits. Although the Secretary also went on to discuss NMED's jurisdiction over rail transport, this discussion was not necessary to its rejection of Concerned Citizens' arguments and, as a result, we need not address the jurisdictional issue. We explain.

The hearing officer's report, which was adopted in its entirety by the Secretary, rejected Concerned Citizens' argument regarding NENMRL's past violations for accepting waste by rail without prior authorization. He determined that NENMRL had "never received a notice of violation [for the] unauthorized and illegal acceptance of waste by rail." He further concluded that "credible testimony" was presented at the hearing to substantiate that during the time period NENMRL had accepted waste by rail, the solid waste regulations applicable at that time had not required NENMRL "to amend its transportation plan to include waste by rail." As to Concerned Citizens' argument that NENMRL's permit application was incomplete due to the unregistered status of its anticipated hauler of waste by rail, the hearing officer rejected this argument and instead concluded that the application met all regulatory requirements with regard to the permit modification for the acceptance of municipal solid waste by rail. Necessarily implicit in this conclusion was a finding that the application was complete and contained all information required in order to grant the permit modification. In other words, the hearing officer implicitly determined that

52

registration by the waste hauler was not required in the application. *See* 20.9.1.200(L)(16)(b) NMAC (giving the Secretary cause to deny a permit application due to the applicant's failure to "to disclose fully all relevant facts, or the permittee's misrepresentation of any relevant facts at any time").

The hearing officer then went on to discuss NMED's authority to limit the transportation of waste by rail, an issue contested by the parties. The Solid Waste Bureau took the position at the hearing that the Secretary had only limited jurisdiction over the transportation of waste by rail, while Concerned Citizens primarily argued that the Secretary must have jurisdiction over rail transportation of waste if the Secretary has the authority to grant a permit modification to accept waste by rail. Although the hearing officer acknowledged Concerned Citizens' argument, he determined that Concerned Citizens had failed to provide him with any legal authority under which he could completely prevent the acceptance of waste by rail. In accordance with the Bureau's position, he then concluded that NMED "only ha[d] jurisdiction over the waste handling practices associated with transferring the waste from the railcars to the landfill operations."

We conclude that the hearing officer properly disposed of Concerned Citizens' arguments on their merits and that the discussion regarding jurisdiction was immaterial to that disposition. Our analysis requires interpretation of the regulation

53

applicable to commercial haulers of waste, which we review de novo. *See Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 13, 133 N.M. 97, 61 P.3d 806 (stating that "it is the function of the courts to interpret the law, and courts are in no way bound by the agency's legal interpretation" of agency regulations (internal quotation marks and citation omitted)).

The relevant regulation provides:

(1)    *Commercial haulers of solid waste shall register with the Department by December 31, 1994, or [thirty] days prior to operations*, and shall submit the following information:

(a)    the name, address, phone number of the applicant and contact person;

(b)    the anticipated start up date, hours of operation, and days of collection;

(c)    a list of types of storage containers required for residences, commercial, institutional and industrial establishments to be served;

(d)    location of vehicle maintenance yard;

(e)    certification of proper licensing for both the drivers and vehicles;

(f)    means of controlling and mitigating odors;

(g)    the transport distance from the nearest and farthest points of collection to the solid waste facility;

(h)    any transport transfer requirements;

(i)     location of transfer station(s) to be used, if any;

(j)     the name and location of each and any solid waste facility to be used; and

(k)     an outline of proposed training for drivers and crew to be able to differentiate between hazardous waste, special waste[,] and solid waste.

20.9.1.200(N) NMAC (emphasis added).

We rely on canons of statutory interpretation to guide our interpretation of the above regulation. *Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 51. Under the plain meaning of this provision, registration by commercial haulers is required "by December 31, 1994, or [thirty] days prior to operations." 20.9.1.200(N)(1) NMAC. Significantly, the provision does not mention registration in the context of the permitting process; rather, it plainly requires only that registration must occur thirty days prior to operations starting at the landfill. Thus, the failure of any of NENMRL's anticipated commercial haulers to register before or during the application process was not a violation of 20.9.1.200(N) NMAC because at that stage, the requested operations had not started. Furthermore, the above provision does not require any action on the part of a permittee or permit applicant, such as NENMRL, with respect to a commercial hauler's obligation to register with NMED. Likewise, the regulatory provisions stating what information a permit applicant must include in an application do not expressly mention that commercial hauler registration

55

information be included in the application. *See* 20.9.1.200(A) NMAC. Thus, we disagree with Concerned Citizens' argument that the regulations mandate that the permit application include commercial hauler registration information.

In addition, we agree with NMED's argument that the failure of a commercial hauler to register was separate from and could not form the basis for denying NENMRL's requested permit modification. Under the solid waste regulations, the Secretary has cause to deny a permit application if there is:

> (a)     noncompliance by the permittee with any condition of the permit or this Part;

> (b)     the permittee's failure in the application or during the permit issuance process to disclose fully all relevant facts, or the permittee's misrepresentation of any relevant facts at any time;

> (c)     a determination that the permitted activity endangers public health, welfare or the environment;

> (d)     the applicant's failure to demonstrate a knowledge and ability to operate a facility in accordance with this Part or a history of non[]compliance with environmental regulations or statutes at other facilities;

> (e)     modification of a facility without the approval of the Secretary, or failure to obtain the approval for transfer of the permit.

20.9.1.200(L)(16) NMAC. Concerned Citizens asserts that the failure of a commercial hauler to register under 20.9.1.200(N) NMAC caused NENMRL to violate sections (a) and (b) of the above provision. We are not persuaded. A

commercial hauler's noncompliance with regulatory registration requirements does not equate to the permittee's noncompliance with the regulations because, as we have previously stated, the permittee has no obligations under the regulatory provision requiring commercial haulers to register with NMED. Moreover, we are not persuaded that the lack of registration information from NENMRL's anticipated rail carrier in its application constituted NENMRL failure to "disclose fully all relevant facts" under 20.9.200(L)(16)(b) NMAC above. The Secretary was in the best position to determine whether NENMRL's application included "all relevant facts" regarding the permit modification to accept waste by rail. Based on our interpretation that commercial hauler registration is required "[thirty] days prior to operations" and not specifically during the permitting process, we conclude that the Secretary did not err in determining that the application disclosed all relevant facts needed for him to reach a decision as to the permit application.

Concerned Citizens asserts in its reply brief that NMED's and NENMRL's argument promoting the interpretation we have adopted cannot serve as the basis for our decision in this case because it was never raised in the administrative proceedings. However, "an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal." *Cordova v. World Fin. Corp. of N.M.*,

57

2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 (internal quotation marks and citation omitted).

We hold that the commercial hauler requirements under the solid waste regulations are separate from the permitting process and, therefore, the failure of a commercial hauler to register does not render the application incomplete, nor does it constitute grounds for denying the application. We need not reach the issue of the Secretary's jurisdiction over rail transport because any such determination is not dispositive on the two issues argued below by Concerned Citizens as grounds for denying the permit modification at issue. Accordingly, we affirm the Secretary's grant of a permit modification to NENMRL for the acceptance of municipal solid waste via rail transport.

**CONCLUSION**

For the foregoing reasons, we affirm the Secretary's final order.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

58

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**TIMOTHY L. GARCIA, Judge**